**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank L. FAZIO, Defendant-Appellant.**

No. 89-3232.

United States Court of Appeals,
Seventh Circuit.

Argued May 11, 1990.

Decided Sept. 28, 1990.

R. Jeffrey Wagner, Asst. U.S. Atty., Office of the U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Steven M. Epstein, Milwaukee, Wis., for defendant-appellant.

Before CUMMINGS, EASTERBROOK, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

This is a direct appeal from a criminal conviction. Frank L. Fazio appeals the district court's denial of his pretrial motion to suppress certain incriminating statements he made to the police. He also challenges the applicability of the Federal Sentencing Guidelines to his case. For the following reasons, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. *Facts*

The pertinent facts of the case are derived from the magistrate's findings of fact, which were based on the testimony of the police and Mr. Fazio at the suppression hearing. The facts were disputed in some respects. To facilitate our later discussion, we shall begin with the government's rendition of the facts and follow by summarizing Mr. Fazio's version of the facts to the extent that version differs from the government's version.

### 1. Government's version of the facts

Mr. Fazio owned and operated the Excalibur Restaurant in Lake Geneva, Wisconsin. On the strength of a police officer's affidavit that recited information from confidential informants that Mr. Fazio was involved in the possession and distribution of cocaine through his restaurant, the police obtained a search warrant for the restaurant. On the afternoon of December 2, 1988, several law enforcement officers searched the restaurant pursuant to the warrant. Mr. Fazio was not present when the search began. After the search was in progress, Mr. Fazio twice called the restaurant to find out what was happening there. He was told that the police were executing a search warrant and that the officers had a copy of the warrant if he had any questions

about the search. When Mr. Fazio arrived at the restaurant at approximately 5:00 p.m., he was met at the entrance by a police officer who escorted him to Chief Newberry of the Lake Geneva Police Department. Chief Newberry directed Mr. Fazio to the office in the back of the restaurant where Officers Swart and Maves and Agent Kelly had been searching. When Mr. Fazio entered the office he placed to the side a briefcase he was carrying.[1] At the officers' request, Mr. Fazio began to open the safe in the office. While opening the safe, Mr. Fazio told the officers that there was a marijuana joint in a sealed envelope in a drawer inside the safe. After Mr. Fazio opened the safe, he left the office pursuant to Chief Newberry's direction and stayed in a small room adjacent to the office.

At some point during the search of his office, Mr. Fazio indicated to the police that he wanted to cooperate. When asked whether he wanted to make a statement, Mr. Fazio replied affirmatively. The police arranged to have the statement taken at the Lake Geneva Municipal Building, which houses both the Police Department and the City Hall. It was decided that Mr. Fazio would drive his own vehicle to the municipal building and that Officers Meinel and Swart would drive their vehicle. The officers and Mr. Fazio left the restaurant at approximately 6:00 p.m. While they were in the restaurant parking lot, Mr. Fazio asked Officer Swart if he wanted to look inside Mr. Fazio's vehicle. Officer Swart looked in the front seat, in the glove compartment, and behind the seat. Mr. Fazio then left the parking lot in his own vehicle and met the officers at the municipal building.

Upon entering the municipal building, the defendant and the two officers went to a conference room. Before Mr. Fazio gave his tape recorded statement, he had a five to ten minute conversation with Officer Swart, who told Mr. Fazio that, if he cooperated, the fact of his cooperation would be relayed to the district attorney and perhaps to the judge. Officer Swart also informed the defendant that he was not under arrest and that he was free to leave. Mr. Fazio also met with District Attorney Koss prior to giving the statement and explained that he wanted to cooperate in any way possible.

Mr. Fazio then gave the police a tape recorded statement. At the start of the interview, he stated that he did not believe that he was under arrest and that he was appearing voluntarily to give officers information relating to the search of his restaurant. Mr. Fazio also stated that he desired to cooperate with authorities and that he had not been coerced into cooperating. During the taped interview, Mr. Fazio made incriminating statements concerning his involvement in cocaine trafficking. At the conclusion of his taped statement, he remained at the municipal building for approximately ten minutes while he repeated to the officers his intention to cooperate. Mr. Fazio did not inquire about the need for an attorney until after he gave the tape recorded statement.[2] The officers eventually told Mr. Fazio that they had all the necessary information and asked him to leave. Mr. Fazio left the municipal building at approximately 7:00 p.m.

### 2. Mr. Fazio's version of the facts

According to the defendant's testimony, a police dispatcher called Mr. Fazio's wife and relayed a message that the police chief wanted Mr. Fazio to come to the restaurant immediately. Upon calling the restaurant during the execution of the search warrant, Mr. Fazio was told by Chief Newberry to

---

1. A subsequent search of the briefcase revealed a loaded .25 caliber pistol, which was seized by the police. The weapon, along with all other physical evidence obtained from the restaurant, was suppressed based on the district court's determination that the search warrant was deficient. *See infra*.

2. According to Officer Swart's testimony, at one point during the taped conversation, Mr. Fazio made the unsolicited statement that he did not want a lawyer. R.16 at 69–70. Officer Swart also testified that, after the completion of the taped statement, when Mr. Fazio continued to talk to the officers, one of them suggested to him that he might want to retain a lawyer. *Id.* at 69–71.

come directly to the restaurant. After he arrived at the restaurant, he was escorted to the back office, where the police asked him to open the safe. After he had opened the safe, he left the office at the officers' request and was frisked by Chief Newberry and was told to wait in the small room adjacent to the office. Mr. Fazio testified that, at this point during the search, he felt that he could not leave the small room and that he was under arrest. He also testified that he was not able to have any contact with his hostess and bartender and that Chief Newberry did not respond to his inquiry concerning when he could reopen the restaurant. Chief Newberry also told him that the police knew everything and that he had better talk.

Mr. Fazio admitted replying "yes" when asked if he wanted to make a statement. He testified, however, that he felt he had to make the statement. He felt that he could open his restaurant sooner if he went downtown to give the statement. Although he desired to discuss with the hostess and bartender the details of operating the restaurant in his absence, he testified that he felt constrained in his ability to do so.

Contrary to Officer Swart's testimony regarding the search of Mr. Fazio's vehicle, Mr. Fazio testified that his vehicle was not searched until he arrived at the municipal building and that he was informed that such a search was a required formality. Although he admitted that he and the officers drove to the municipal building in separate vehicles, he testified that the officers followed him to the building. He further testified that, upon their arrival at the municipal building, Officer Swart reassured Mr. Fazio that "there would not be any problems" if he cooperated. R.16 at 95. Mr. Fazio also claimed that, prior to making the tape recorded statement, he asked Officer Swart whether he should get an attorney, to which Officer Swart replied, "that's up to you." R.16 at 95. Finally, Mr. Fazio testified that he gave the statement because he thought he was under arrest.

## B. *Procedural Posture*

On February 7, 1989, the federal grand jury returned a two-count indictment against Mr. Fazio and a codefendant. The two counts charged conspiracy to distribute cocaine (count 1) and marijuana (count 2) in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. Mr. Fazio filed a motion to suppress both the physical evidence seized during the search of his restaurant and the statement he gave to the police on the night of the search. An evidentiary hearing on the matter was held before a magistrate. On the motion to suppress the physical evidence, the magistrate concluded that the police officer's affidavit, which relied on information from confidential informants, was based on stale information and failed to establish the independent reliability of the informants. Thus, the magistrate concluded that the affidavit failed to establish probable cause. The magistrate also determined that the "good faith" exception to the exclusionary rule was not available because the police officer-affiant could not have held an objectively reasonable belief that probable cause existed at the time application was made for the warrant.[3] Accordingly, the magistrate recommended that the items seized from the defendant's restaurant be suppressed.

The magistrate then turned to Mr. Fazio's motion to suppress the statement he gave to the police at the municipal building. After making factual findings, the magistrate concluded that Mr. Fazio was not in custody at any time during either the search of his restaurant or at the municipal building where the statement was made. The magistrate also concluded that Mr. Fazio voluntarily made the statement and that the statement was "free from any police coercion or undue influence." R.17 at 18.

The magistrate then considered whether the invalid search warrant and resulting illegal search of Mr. Fazio's restaurant, in conjunction with police questioning of Mr. Fazio, rendered Mr. Fazio's statements to the police inadmissible. He concluded that Mr. Fazio's statement was sufficiently at-

---

**3.** The government does not challenge this deter-   mination on appeal.

tenuated from the illegal search to purge the statement of any taint associated with the search. First, he noted that the police had found no contraband during the search of the restaurant that it used in an effort to extract a confession from the defendant. Second, the magistrate noted that the defendant's concern about being able to open his restaurant was largely self-imposed. Third, he noted that neither excessive force nor threats were used against the defendant.[4] Fourth, the magistrate observed that Mr. Fazio's voluntary act of opening the safe and his voluntary admission that a marijuana joint was in the safe were "persuasive evidence" of his desire to cooperate with officials. R.17 at 25. Fifth, the magistrate pointed to the fact that Mr. Fazio, although somewhat emotional at the police station, was mature, educated, coherent, and responsive to police questions. Finally, the magistrate made a credibility finding regarding Mr. Fazio's testimony. The magistrate noted the inconsistencies in the defendant's testimony regarding both whether he felt free to leave and when he felt that he had become a target of the police investigation. Further inconsistency was noted between Mr. Fazio's taped statement that he was providing information voluntarily and his after-the-fact impressions that his statement was not voluntary. The magistrate ultimately found that "[g]iven these inconsistencies, and the self-serving nature of his testimony, it cannot be credited with much weight." R.17 at 26.

The magistrate then concluded that Mr. Fazio's voluntary desire to cooperate with the police was the underlying motive for his statement. Furthermore, the magistrate added, application of the exclusionary rule would not effectuate the deterrent policies behind the rule because the police, although they had made serious errors, had neither sought nor achieved by their misconduct a significant influence on the defendant's decision to provide a voluntary statement to the police. The magistrate

accordingly recommended to the district court that it deny Mr. Fazio's motion to suppress the statement. The district court adopted both the magistrate's findings of fact and its reasoning with regard to the admissibility of Mr. Fazio's statement and denied the motion to suppress. Mr. Fazio entered a guilty plea to the cocaine charge that was conditioned on his right to appeal the denial of his motion to suppress. He now appeals the district court's determination that his statement to the police was admissible.

## II

## ANALYSIS

### A.  Lack of Miranda Warnings

Mr. Fazio first contends that his statements should have been suppressed because the police never read him his *Miranda* rights. The district court agreed with the magistrate's recommendation that no *Miranda* warnings were necessary in this case because Mr. Fazio never was "in custody." *Miranda* warnings are required to be given only to suspects who are subjected to "custodial interrogation." *Illinois v. Perkins*, —— U.S. ——, 110 S.Ct. 2394, 2397, 110 L.Ed.2d 243 (1990). Custodial interrogation refers to " 'questioning initiated by law enforcement officers after a person has been taken into custody....' " *Id.* (quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)). Hence, the threshold inquiry in determining whether *Miranda* warnings are necessary is whether the police have placed " 'such a restriction on a person's freedom as to render him "in custody." ' " *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) (per curiam)). Although in undertaking this inquiry, we consider the " 'totality of the circumstances,' " *United States v. Hocking*, 860 F.2d 769, 773 (7th

---

**4.** Although the magistrate alluded to Chief Newberry's alleged comment that the police "kn[o]w everything and [that] Fazio had better talk," R.17 at 24, the magistrate considered this comment to be sufficiently attenuated from Mr.

Fazio's decision to give the police a statement because it was an isolated remark that was not followed up by any other coercive statement and that preceded by at least one-half hour Mr. Fazio's consent to give the police a statement.

Cir.1988) (quoting *United States v. Helmel*, 769 F.2d 1306, 1320 (8th Cir.1985)), "the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Beheler*, 463 U.S. at 1125, 103 S.Ct. at 3520 (quoting *Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714). Mr. Fazio was not formally under arrest at the time he made the statements to the police. Thus, our inquiry is limited to a determination whether, "at the time of that interrogation[,] [the defendant] was subjected to a ' "restraint on [his] freedom of movement" of the degree associated with a formal arrest.' " *Hocking*, 860 F.2d at 772 (quoting *Beheler*, 463 U.S. at 1125, 103 S.Ct. at 3520 (quoting *Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714)).

In reviewing the district court's determination on the issue of "custodial interrogation," we shall accept the district court's underlying factual findings and its resolution of credibility disputes unless they are clearly erroneous. *See United States v. Carraco*, 887 F.2d 794, 819 (7th Cir.1989); *United States v. Talkington*, 843 F.2d 1041, 1045 (7th Cir.1988); *see also United States v. Boden*, 854 F.2d 983, 990–91 (7th Cir.1988); *United States v. Laughlin*, 772 F.2d 1382, 1386 (7th Cir.1985); *United States v. Ceballos*, 812 F.2d 42, 47 & n. 1 (2d Cir.1987). This court has stated, however, that "[a]lthough this determination tends to follow from various factual findings, the ultimate issue of whether there was a custodial interrogation is a mixed question of law and fact" subject to independent appellate review. *Hocking*, 860 F.2d at 772. *But see, e.g., United States v. Poole*, 806 F.2d 853, 853 (9th Cir.1986)

(holding that the determination of "custodial interrogation is essentially factual," and thus subject to "clearly erroneous" review), amending 794 F.2d 462 (9th Cir.1986); *cf. Ceballos*, 812 F.2d at 47 (the determinations of the district court are entitled to "some deference because the determination ... is inextricably intertwined with the credibility of the witnesses").[5]

■ The issue of coercion is determined from the perspective of a reasonable person in the position of the suspect. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984). We cannot say that, from the perspective of a reasonable person in Mr. Fazio's position, he was subjected to a degree of restraint associated with that of a formal arrest. The only event at the restaurant that possibly could be construed as a limitation on Mr. Fazio's freedom was his brief stay in a small room near his office during the search of the office. There is no evidence, however, that Mr. Fazio was locked in the room or physically restrained in any way. He was not handcuffed and never had a gun drawn on him. Although he testified at one point during the suppression hearing that he felt he was under arrest at the restaurant, the magistrate (and the district court, which adopted the magistrate's findings) largely discredited this testimony as self-serving and inconsistent with other portions of his testimony. *See id.* at 442 & n. 35, 104 S.Ct. at 3151 & n. 35 (rejecting a test for determining "in custody" that relies on the defendant's subjective perceptions). We cannot say that this credibility determination was clearly erroneous.[6] A more fundamental impedi-

---

**5.** We note that some recent cases from our circuit have declared that mixed questions of law and fact should be reviewed under the clearly erroneous standard when they involve fact-specific applications of law. *See Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928, 933–37 (7th Cir.1989) (en banc); *Mucha v. King*, 792 F.2d 602, 604–06 (7th Cir.1986); *see also United States v. Malin*, 908 F.2d 163, 169–70 (7th Cir.1990) (Easterbrook, J., concurring). We need not definitively decide the issue here because we conclude that the district court's findings of fact and credibility determinations were not clearly erroneous and that the district court committed no legal error in applying the law to

these facts. *Cf. Boden*, 854 F.2d at 990–91 n. 2 (noting that, in most cases, the ultimate result will be the same regardless of the variation in standard of review "because for the district court to apply 'wrong' law is an abuse of discretion").

**6.** Even accepting Mr. Fazio's assertion that he was subjected to some degree of detention by virtue of Chief Newberry's instruction that Mr. Fazio should stay in the room adjacent to his office during the search of the office, we could not agree that such a degree of detention would approximate that of a formal arrest so as to

ment to Mr. Fazio's argument that his *Miranda* rights were violated based on his alleged detention at the restaurant is the fact that he was not interrogated at the restaurant. *See Rhode Island v. Innis,* 446 U.S. 291, 300–01, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980) (interrogation means "express questioning or its functional equivalent").[7]

■ Beyond the events at the restaurant, Mr. Fazio voluntarily agreed to go downtown to give a statement to police and drove separately in his own vehicle to the municipal building. *See United States v. Phillips,* 812 F.2d 1355, 1357 (11th Cir. 1987) (per curiam).[8] He repeatedly was informed that he was not under arrest and that he was free to leave at any time. Mr. Fazio also acknowledged that he understood the situation and that he desired to cooperate. Under these circumstances, we cannot say that the district court erred in determining that Mr. Fazio was not in custody when he gave the incriminating statement and thus was not entitled to *Miranda* warnings.

### B. *Voluntariness of the Statement*

■ Mr. Fazio also contends that the statement he gave was involuntary as the product of psychological coercion and intimidation. We disagree.[9] " 'In contrast to the presumption of coercion that attends

statements given during custodial interrogation in the absence of *Miranda* warnings, statements made during a noncustodial interrogation are not viewed with suspicion.' " *United States v. Hocking,* 860 F.2d 769, 774 (7th Cir.1988) (quoting *United States v. Serlin,* 707 F.2d 953, 958 (7th Cir.1983)). Although the Supreme Court has recognized that even noncustodial interrogations " 'might possibly in some situations, by virtue of some special circumstances, be characterized as one where "the behavior of . . . law enforcement officials was such as to overbear [an interrogee's] will to resist and bring about confessions not freely self-determined," ' " [10] this is not such a situation. The test for determining whether a confession is voluntary is " 'whether the defendant's will was overborne at the time he confessed.' " *Id.* (quoting *Lynumn v. Illinois,* 372 U.S. 528, 534, 83 S.Ct. 917, 920, 9 L.Ed.2d 922 (1963)).

The record in this case does not support the conclusion that Mr. Fazio's "will was overborne" or that his statement was the product of police coercion. Mr. Fazio stated that he wanted to cooperate, drove himself to the police station, and gave the police a statement after repeatedly being advised that he was not under arrest and that he was free to leave. The statement was not given in the police station, but instead was given in a city hall conference

---

require a *Miranda* warning. *Cf. Berkemer,* 468 U.S. at 435–42, 104 S.Ct. at 3147–51 (motorist temporarily detained at routine traffic stop not entitled to *Miranda* warnings); *United States v. Boden,* 854 F.2d 983, 994–95 (7th Cir.1988) (*Terry* stops do not require *Miranda* warnings).

7. Whether, however, Mr. Fazio's statement could have been the product of the unlawful search of the restaurant is treated *infra.*

8. In *Phillips,* police officers, along with an informant who was wearing a body wire, went to the defendant's pawn shop where the informant attempted to make an illegal gun purchase. When the shop owner refused to sell the informant the gun, the police asked the shop owner to accompany them to the police station. The shop owner agreed to accompany the officers, and the officers also took possession of the shop owner's firearms transaction record. The shop owner was not arrested, nor handcuffed, nor locked up at the police station. He also was never advised of his *Miranda* rights. 812 F.2d

at 1357. At the station, he gave a statement regarding a prior illegal sale to the informant. Although the defendant testified at the suppression hearing that he felt he was not free to leave either the shop or the police station, *id.,* the court concluded that the defendant was never in custody and, thus, not entitled to *Miranda* warnings. *Id.* at 1362. A co-owner of the shop, who drove himself to city hall and gave a statement at the request of police, also was determined not to have been in custody. *Id.* at 1357, 1362.

9. This circuit reviews the issue of the voluntariness of a confession under a *de novo* standard of review. *United States v. Hocking,* 860 F.2d 769, 773 (7th Cir.1988); *United States v. Hawkins,* 823 F.2d 1020, 1022 (7th Cir.1987).

10. *Hocking,* 860 F.2d at 774 (quoting *Beckwith v. United States,* 425 U.S. 341, 347–48, 96 S.Ct. 1612, 1616–17, 48 L.Ed.2d 1 (1976) (quoting *Rogers v. Richmond,* 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961))).

room within the municipal complex. Both Officers Meinel and Swart testified that, following the taping of Mr. Fazio's statement, Mr. Fazio lingered and continued to talk and reiterate his desire to cooperate with the officers. Eventually, the officers had to ask Mr. Fazio to leave. These facts do not suggest the existence of "[c]oercive police activity," which is "'a necessary predicate to the finding that a confession is not "voluntary" within the meaning of the Due Process Clause of the Fourteenth Amendment.'" *United States ex rel. Link v. Lane,* 811 F.2d 1166, 1170 (7th Cir.1987) (quoting *Colorado v. Connelly,* 479 U.S. 157, 166, 107 S.Ct. 515, 521, 93 L.Ed.2d 473 (1986)).

### C. *Was the Statement Sufficiently Attenuated from the Illegal Search*

Mr. Fazio also contends that his statement must be suppressed pursuant to the exclusionary rule because it was the product of the illegal search pursuant to the invalid warrant. The exclusionary rule is a "judicially created remedy," *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974), whose "prime purpose is to deter future unlawful police conduct," *id.* at 347, 94 S.Ct. at 619. In keeping with that purpose, the Supreme Court repeatedly has noted that "'application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served.'" *United States v. Leon,* 468 U.S. 897, 908, 104 S.Ct. 3405, 3412, 82 L.Ed.2d 677 (1984) (quoting *Calandra,* 414 U.S. at 348, 94 S.Ct. at 620). Thus, the Court has declined to adopt a "'*per se* or "but for" rule'" of causation that would render inadmissible all evidence discovered through a chain of causation that started with illegal police action. *United States v. Ceccolini,* 435 U.S. 268, 276, 98 S.Ct. 1054, 1060, 55 L.Ed.2d 268 (1978) (quoting *Brown v. Illinois,* 422 U.S. 590, 603, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975)). Instead, the Court has determined that the exclusionary rule should not apply when the causal connection between illegal police conduct and the procurement of evidence is "'so attenuated as to dissipate the taint'" of the illegal action. *Segura v. United States,* 468 U.S. 796, 805, 104 S.Ct. 3380, 3385, 82 L.Ed.2d 599 (1984) (quoting *Nardone v. United States,* 308 U.S. 338, 341, 60 S.Ct. 266, 267, 84 L.Ed. 307 (1939)); *see also Wong Sun v. United States,* 371 U.S. 471, 491, 83 S.Ct. 407, 419, 9 L.Ed.2d 441 (1963).

In *Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975), the Supreme Court articulated several factors that guide the determination "whether the taint of an unlawful search or arrest has sufficiently dissipated so as to no longer taint a subsequently acquired statement." *United States v. Patino,* 862 F.2d 128, 132 (7th Cir.1988) (citing *Brown* ), *cert. denied,* —— U.S. ——, 109 S.Ct. 2072, 104 L.Ed.2d 637 (1989). As indicated in *Brown,* the voluntariness of the statement under the fifth amendment is a "threshold requirement." 422 U.S. at 604, 95 S.Ct. at 2262; *see Patino,* 862 F.2d at 132. Although voluntariness is an important factor, it is not dispositive and does not end the attenuation inquiry. The statement still must be "'sufficiently an act of free will to purge the primary taint'" of the fourth amendment violation. *Brown,* 422 U.S. at 602, 95 S.Ct. at 2261 (quoting *Wong Sun,* 371 U.S. at 486, 83 S.Ct. at 416). The other factors that determine whether the statement sufficiently was attenuated from the illegality are the "'temporal proximity' of the illegal conduct and the confession, the presence of any intervening circumstances, 'and, particularly, the purpose and flagrancy of the official misconduct.'" *Patino,* 862 F.2d at 132 (quoting *Brown,* 422 U.S. at 603–04, 95 S.Ct. at 2261–62).

■ As we already have noted, Mr. Fazio's statement was voluntary. However, the temporal proximity between the illegal search and the statement was not that long—perhaps only an hour. The Supreme Court has found longer intervals to be insufficient to purge the taint of an illegal arrest.[11] As this court expressly noted in

---

11.  *See Taylor v. Alabama,* 457 U.S. 687, 691, 102 S.Ct. 2664, 2667, 73 L.Ed.2d 314 (1982) (confession that followed illegal arrest by six hours was not sufficiently attenuated where suspect re-

*Patino*, however, the time span between the police misconduct and the confession is not "dispositive on the question of taint." 862 F.2d at 133 n. 3. It must be noted that at no time during Mr. Fazio's entire encounter with police was he in custody. Moreover, he freely agreed to speak with police at a site removed from the restaurant and then drove his own vehicle to the meeting.[12] Given the other circumstances surrounding the taking of Mr. Fazio's statement and the intervening events between the time his restaurant was searched and the time he gave the statement, we do not consider the length of time between the search and the statement to tip the balance significantly toward a conclusion that the statement was tainted by the search.

Finally, and most significantly, a consideration of the "purpose and flagrancy of the official misconduct," *Brown*, 422 U.S. at 604, 95 S.Ct. at 2262, supports the conclusion that the statement sufficiently was attenuated from the search. This factor is "particularly" important[13] because it is tied to the rationale of the exclusionary rule itself. Because the primary purpose of the exclusionary rule is to discourage police misconduct, application of the rule does not serve this deterrent function when the police action, although erroneous, was not undertaken in an effort to benefit the police at the expense of the suspect's protected rights. In this case, both the magistrate and the district court concluded that the officers' search of the restaurant pursuant to the defective warrant was not a purposeful and flagrant violation of Mr. Fazio's rights and was not an attempt to obtain evidence by exploitation of Mr. Fazio's rights. *Cf. United States v. Carsello*, 578 F.2d 199, 204 n. 4 (7th Cir.) (good faith error concerning the scope of a search warrant is not a flagrant violation for purposes of attenuation analysis), *cert. denied*, 439 U.S. 979, 99 S.Ct. 565, 58 L.Ed.2d 650 (1978). We agree and conclude that Mr. Fazio's statement sufficiently was attenuated from the illegal search to render the statement admissible.

### D. Whether the Sentencing Guidelines Apply to the Offense

■ Mr. Fazio's last contention concerns the applicability of the Federal Sentencing Guidelines to his offense. He entered a conditional guilty plea to a charge of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. The conspiracy began before the effective date of the guidelines (November 1, 1987), but continued in existence beyond the effective date. Mr. Fazio contends that it is a violation of the ex post facto clause, U.S. CONST. art. I, § 9, to apply the guidelines to an offense which began before the effective date of the guidelines.

■ As this court has noted, the guidelines do not apply to offenses that were *committed* before November 1, 1987. *See United States v. Stewart*, 865 F.2d

---

**12.** *See United States v. Edmondson*, 791 F.2d 1512, 1515–16 (11th Cir.1986) (holding that con- mained in police custody, was unrepresented by counsel, had been questioned, fingerprinted, and subjected to a lineup); *Brown*, 422 U.S. at 604–05, 95 S.Ct. at 2262–63 (confession that followed illegal arrest by two hours was not sufficiently attenuated where the arrest itself was a blatantly improper "expedition for evidence" and no intervening event of any significance occurred between the time of the arrest and the confession). *But cf. Rawlings v. Kentucky*, 448 U.S. 98, 107–08, 100 S.Ct. 2556, 2562–63, 65 L.Ed.2d 633 (1980) (the relatively nonthreatening, congenial atmosphere of a 45 minute detention that preceded a statement "outweigh[ed] the relatively short period of time that elapsed between the initiation of the detention and petitioner's admissions").

fession, which was given approximately 45 minutes after an illegal arrest at a site away from the scene of arrest and after the suspect had been advised of his *Miranda* rights, was sufficiently attenuated from the taint of the illegal arrest); *United States v. Milian–Rodriguez*, 759 F.2d 1558, 1565 (11th Cir.) (even assuming arguendo that initial arrest was the result of police misconduct, subsequent confession one hour later was not tainted by the arrest where police removed the suspect from the site of the arrest and administered *Miranda* warnings before the interview began), *cert. denied*, 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 112 (1985). Although in Mr. Fazio's case no *Miranda* warnings were given, as our previous analysis has indicated, none were required to be given because Mr. Fazio never was in custody.

**13.** *See Brown*, 422 U.S. at 604, 95 S.Ct. at 2262.

115, 118 (7th Cir.1988) (conspiracy defendant whose offenses were committed "well before the effective date" of the guidelines was not entitled to be sentenced under the guidelines). Although this circuit has not yet had occasion to consider whether the guidelines apply to a defendant whose offense begins before the effective date of the guidelines but continues beyond the effective date of the guidelines, the other circuits that have considered the issue unanimously have concluded that application of the guidelines in such a case does not violate the ex post facto clause.[14] We see no reason to deviate from the reasoning of these circuits on this issue. Thus, we conclude that the district court did not err in sentencing Mr. Fazio under the Federal Sentencing Guidelines.[15]

Conclusion

For the foregoing reasons, the order of the district court is affirmed.

AFFIRMED

---

**14.** *See, e.g., United States v. Story,* 891 F.2d 988, 992–96 (2d Cir.1989) (holding that the application of the guidelines to such offenses does not violate the ex post facto clause); *United States v. Rosa,* 891 F.2d 1063, 1068–69 (3d Cir.1989) (same); *United States v. Sheffer,* 896 F.2d 842, 844–45 (4th Cir.1990) (same); *United States v. White,* 869 F.2d 822, 826 (5th Cir.) (same), *cert. denied,* —— U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989); *United States v. Walton,* 908 F.2d 1289, 1299 (6th Cir.1990) (same); *United States v. Walker,* 885 F.2d 1353, 1354 (8th Cir.1989) (same); *see also United States v. Thomas,* 895 F.2d 51, 57 (1st Cir.1990) (holding the guidelines applicable in such a case without expressly addressing the ex post facto issue); *United States v. Gray,* 876 F.2d 1411, 1418 (9th Cir.1989) (same), *cert. denied,* —— U.S. ——, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990); *United States v. Williams,* 897 F.2d 1034, 1040 (10th Cir.1990) (same).

**15.** Mr. Fazio also contends that he should not have been sentenced under the guidelines because a codefendant received a less severe sentence than he did and was not sentenced under the guidelines. Mr. Fazio neither gives us any information nor identifies any factual basis in the record upon which his contention is based.

Although he asserts that "[i]t is inequitable and unreasonable that both Fazio and Atkinson were indicted for conspiracy to distribute controlled substances during the same time period while Fazio was sentenced under the Federal Sentencing Guidelines and Atkinson was not," Appellant's Br. at 28, the government contends that defendant Atkinson terminated his involvement in the conspiracy prior to November 1, 1987. Because Mr. Fazio has neither identified facts nor cited any authority in support of his proposition, he has waived this argument. *See United States v. Adamo,* 882 F.2d 1218, 1230 (7th Cir.1989) (failure to identify facts necessary to support the issues raised constitutes a waiver of that issue); *Ordower v. Feldman,* 826 F.2d 1569, 1576 (7th Cir.1987) (issue raised perfunctorily without citation to authority constitutes waiver of the issue); Fed.R.App. P. 28(a)(4).

Even were we to consider Mr. Fazio's argument on this point, we would find it to be without merit. We have no appellate jurisdiction to review the sentence of a defendant who was properly sentenced under the guidelines on the ground that a codefendant improperly was sentenced. *United States v. Guerrero,* 894 F.2d 261, 267–68 (7th Cir.1990). *See generally United States v. Franz,* 886 F.2d 973 (7th Cir.1989).