UNITED STATES of America, Plaintiff–Appellee,

v.

Robert A. LEVY, Defendant–Appellant.

No. 91–1002.

United States Court of Appeals, Seventh Circuit.

Argued June 14, 1991.

Decided Jan. 30, 1992.

Rehearing and Rehearing En Banc Denied Feb. 24, 1992.

---

**1100**

Jeffrey Anderson, Asst. U.S. Atty. Madison, Wis. (argued), for plaintiff-appellee.

Stephen J. Eisenberg, Madison, Wis. (argued), for defendant-appellant.

Before POSNER, MANION and KANNE, Circuit Judges.

KANNE, Circuit Judge.

A jury convicted Robert A. Levy of one count of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, and one count of aiding and abetting in the possession and distribution of cocaine in violation of 18 U.S.C. § 2. Pursuant to the Sentencing Guidelines, the district court sentenced him to two concurrent 120 month terms of imprisonment, to be followed by an eight-year period of supervised release. Levy now appeals both his conviction and sentence. We affirm.

## I.

Robert Levy and his wife, Hyacinth, owned and operated M & R Records, a retail music and novelty store located in Waukegan, Illinois. Based on information obtained from suspected cocaine distributor Randall Wagner, several federal and state law enforcement agents visited Mr. Levy on June 26, 1990 to question him about his involvement in a cocaine distribution scheme with Wagner, and to seek his cooperation in other drug-dealing investigations. At the time, Mr. Levy was on parole for a 1987 Illinois drug conviction. The agents had no warrant for Levy's arrest, but did possess a grand jury subpoena directing production of his business records. The agents also brought along a tape recording of an attempted cocaine transaction between Levy and Wagner.[1] In addi-

---

**1.** In exchange for leniency, Wagner agreed to participate in a video taped "sting" transaction with Levy, and to subsequently testify against Levy at trial. Levy met Wagner and an undercover DEA agent in a parking lot on April 20, 1989. Levy indicated that he preferred payment

tion, the agents carried with them copies of four money orders and a canceled check payable to Levy and drawn by Wagner.

The agents entered Levy's store at approximately 8:30 p.m. They approached the defendant, his wife and an employee and asked if Robert Levy was there. Robert Levy initially denied his identity because he thought the agents were process servers or bill collectors. Hyacinth Levy did identify herself as Robert Levy's wife. One of the agents then asked Mrs. Levy if he could speak to her outside. Once outside, the agents identified themselves and explained that they wanted to talk to her husband about his drug activities and obtain his cooperation in their investigation. They also told her they were not there to arrest anyone. In the meantime, Robert Levy had acknowledged his identity when the agents confronted him with his photograph. The agents then displayed their identification. At this point, Mrs. Levy joined her husband and the employee in the store. The agents told Robert Levy that they wished to speak with him privately. Mr. Levy declined, stating that he had no secrets to keep from his wife and friend. Mrs. Levy and the employee then remained in the store with Mr. Levy. The agents explained to Mr. Levy that he was not under arrest, that he would not be arrested that night, that he was under no obligation to speak with them, and that he was free to contact an attorney if he so desired. The agents informed Mr. Levy that they wanted to gain his cooperation in their investigation and that his cooperation would be reported to the United States Attorney. After the agents explained the purpose of their visit, Mr. Levy agreed to talk with them. The agents then proceeded to question Mr. Levy about his drug transactions with Wagner.

During the questioning, the agents played the tapes of the April 20, 1989 meeting with Wagner, and also showed Levy the copies of the four money orders and the check. Having been apprised of the seriousness of his predicament, Mr. Levy indi-

cated that he would cooperate. He then admitted, among other things, that he had sold between six and eight pounds of cocaine between July 1, 1988 and March 21, 1989, and that the returned check and money orders were payments for cocaine. The interview was conducted in normal conversational tones in a relaxed atmosphere with both Mrs. Levy and the employee present throughout most of the interview. At the conclusion of the questioning, Mr. Levy was given business cards by two of the agents with the understanding that Mr. Levy would be getting in touch with them in a few days. The agents then departed at approximately 9:15 p.m.

On July 11, 1990, a grand jury returned a two-count indictment against Levy, charging him with: (1) conspiracy "by agreeing to knowingly and intentionally distribute cocaine on or about July 1, 1988, until on or about March 21, 1989," in violation of 21 U.S.C. § 846; and (2) aiding and abetting "in possession with intent to distribute ... cocaine," in violation of 18 U.S.C. § 2.

Before trial, Levy moved *in limine* that evidence of the April 20, 1989 "sting" transaction be held inadmissible, on the grounds that it did not qualify as prior bad act evidence within the meaning of Federal Rule of Evidence 404(b). He also moved to suppress the incriminating statements he made during his questioning by the drug enforcement agents on June 26, 1990, claiming that he made the statements involuntarily and without receiving the *Miranda* warnings. The court denied both motions. Thereafter on October 24, 1990, the government, pursuant to 21 U.S.C. § 851(a), notified Levy of its intent to seek enhancement of his sentence based on Levy's prior Illinois drug dealing conviction. Also included, in addition to the statutorily required notice, was the possibility of enhancement of any sentence based on the amount of cocaine involved (more than 500 grams). *See* 21 U.S.C. § 841(b)(1)(B)(ii)(II). The case proceeded to trial on October 29, 1990. Two days later,

for cocaine up front, but when Wagner insisted that the payment and delivery take place simultaneously, the deal fell through. Wagner's en-

tire conversation was electronically monitored and recorded by DEA agents.

on October 31, 1990 the jury returned a verdict of guilty on both counts in the indictment.

At sentencing, on December 21, 1990, the court concluded that Levy had delivered 1,288 grams of cocaine to Wagner, basing its calculations primarily on the statements Levy made during his interview with the drug agents on June 26, 1990. Accordingly, Levy was assigned an offense level of 28 under the Sentencing Guidelines. However, his Guidelines range for incarceration of 97 to 121 months was altered because of the ten-year mandatory minimum which the court determined should be imposed pursuant to the sentencing enhancement provision in 21 U.S.C. § 841(b)(1)(B)(ii)(II). As a result, Levy was sentenced at the mandatory minimum—120 months on each count to run concurrently—with an eight year period of supervised release. This appeal followed.

## II.

*Evidence of Defendant's Prior Misconduct*

■■■ Levy initially contends that the district court committed reversible error by admitting evidence of an attempted cocaine transaction with Wagner on April 20, 1989. The district court ruled that although the transaction fell through, it was nonetheless admissible under Rule 404(b) to show Levy's intent to distribute cocaine as charged in the indictment.[2] Levy now challenges this ruling on three grounds: (1) the video and audio tapes of the April 20, 1989 conversation do not prove his intent to distribute cocaine because the transaction was never consummated; (2) the attempted transaction was not sufficiently similar to the crimes charged; and (3) even if the transaction was similar to the crime charged, the tapes were not probative of Levy's identity and would therefore unduly prejudice his defense. In addition, Levy asserts that the evidence of the April 20,

1989 conversation should not have been admitted because it was merely cumulative within the meaning of Federal Rule of Evidence 403. Both arguments fail.

■■■ We have frequently discussed the standard which district courts should employ when ruling on the admissibility of prior bad acts under Rule 404(b). *See e.g., United States v. Zapata,* 871 F.2d 616 (7th Cir.1989); *United States v. Beasley,* 809 F.2d 1273 (7th Cir.1987); *United States v. Shackleford,* 738 F.2d 776 (7th Cir.1984). As we explained in *United States v. Zapata,*

> To determine if such evidence is admissible, the district court must engage in a four-pronged analysis and evaluate whether (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged, (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act, and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

871 F.2d at 620. *See also United States v. Manganellis,* 864 F.2d 528, 531–32 (7th Cir. 1988); *United States v. Rollins,* 862 F.2d 1282, 1294 (7th Cir.1988), *cert. denied,* 490 U.S. 1074, 109 S.Ct. 2084, 104 L.Ed.2d 648 (1989). In reviewing decisions to admit evidence of prior bad acts based on this four-pronged analysis, the district court will only be reversed upon a showing that the court committed a clear abuse of discretion. *United States v. Montoya,* 891 F.2d 1273, 1284 (7th Cir.1989); *United States v. Zapata,* 871 F.2d at 621; *United States v. Harrod,* 856 F.2d 996, 999 (7th Cir.1988).

■■■ Here, the district court did not abuse its discretion in admitting the evidence of Levy's attempted cocaine transaction on April 20, 1989. After applying the four-pronged *Zapata* test for evaluating

---

**2.** Rule 404(b) provides:
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible

> for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

FED.R.EVID. 404(b).

Rule 404(b) motions, the district court concluded that the evidence clearly established Levy's intent to distribute cocaine. As the district court noted, the tapes and their accompanying testimony illustrate that Levy and Wagner spent a considerable time negotiating the time of delivery and payment for the proposed cocaine purchase, and that Levy repeatedly indicated that he was willing to deliver the cocaine to Wagner if Wagner first "fronted" payment.[3] Moreover, there is no question that the attempted transaction was sufficiently similar to the conspiracy charged in this case as to justify its admission under Rule 404(b). Both acts dealt with face-to-face transactions involving cocaine sales in Waukegan, Illinois, and took place within a one month time-period. Such evidence, though admittedly harmful to Levy's defense, hardly qualifies as unduly prejudicial or cumulative within the meaning of Rule 403. We therefore conclude that the district court's decision to admit this evidence was not an abuse of its discretion.[4]

*Lack of Miranda Warnings*

 Levy next contends that the district court should have suppressed the incriminating statements he made during his June 26, 1990 interrogation because the law enforcement agents failed to give him the *Miranda* warnings prior to questioning. But law enforcement officers need not administer *Miranda* warnings to suspects who are questioned outside of a custodial setting. *Illinois v. Perkins*, 496 U.S. 292, 110 S.Ct. 2394, 2397, 110 L.Ed.2d 243 (1990). *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977) ("police officers are not required to administer *Miranda* warnings to everyone whom they question"); *United States v. Lane*, 811 F.2d 1166, 1170 (7th Cir.1987) ("*Miranda* deals only with 'the admissibility of statements obtained from an individual who is subjected to custodial police interrogation' ") (quoting *Miranda v. Arizona*, 384 U.S. 436, 439, 86 S.Ct. 1602, 1609, 16 L.Ed.2d 694 (1966)). Hence, the threshold inquiry in determining whether *Miranda* warnings are required is whether the police have placed "such a restriction on a person's freedom as to render him 'in custody.'" *United States v. Fazio*, 914 F.2d 950, 954 (7th Cir.1990) (quoting *Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714). When reviewing the district court's determination on the issue of "custody," we will not disturb the district court's underlying factual findings and its resolution of credibility disputes unless they are clearly erroneous. *Fazio*, 914 F.2d at 955; *United States v. Carrasco*, 887 F.2d 794, 819 (7th Cir.1989); *United States v. Talkington*, 843 F.2d 1041, 1045 (7th Cir.1988); *see also United States v. Boden*, 854 F.2d 983, 990–91 (7th Cir.1988); *United States v. Laughlin*, 772 F.2d 1382, 1386 (7th Cir.1985).[5]

 A suppression hearing was held at which testimony was received from drug

---

3. Contrary to what Levy asserts, the mere fact that this transaction was never consummated is irrelevant to whether the evidence of the transaction is admissible towards Levy's intent to distribute cocaine. Rule 404(b) makes no distinction between the probative value of attempted and completed bad acts.

4. Levy makes a related assertion that he should have been granted a mistrial because he was not provided with a report prepared by the DEA agent accompanying Wagner during the "sting" transaction, until after the agent testified. Levy misreads the requirements of the Jencks Act, Title 18 U.S.C. § 3500. *See also* FED.R.CRIM.P. 26.2(a) (codifying the Jencks Act). The Jencks Act requires the government to produce "any statement of the witness that is in their possession" on the motion by the defendant "[*a*]*fter* a witness other than the defendant has testified on direct examination" (emphasis added). The government was unaware that the agent had prepared such a report until after he had testified, at which point the report was then provided both to the prosecutor and the defense.

5. Recent cases from our circuit have held that mixed questions of law and fact should be reviewed under the clearly erroneous standard when they involve fact specific applications of law. *See Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928, 933–37 (7th Cir.1989) (en banc); *Mucha v. King*, 792 F.2d 602, 604–06 (7th Cir.1986); *see also United States v. Malin*, 908 F.2d 163, 169–170 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 534, 112 L.Ed.2d 544 (1990) (Easterbrook, J., concurring). *United States v. Hocking*, 860 F.2d 769, 772 (7th Cir.1988), which applied a *de novo* review with regard to the issue of custodial interrogation, appears to be inconsistent with our existing case law, as well as the decisions of other circuits. *See, e.g. United States v. Poole*, 806 F.2d 853 (9th Cir.1986) (the determination of custodial interrogation is

agents, Mr. Levy, Mr. Levy's wife and their employee concerning the events surrounding the questioning of Mr. Levy on June 26, 1990. Based on the evidence submitted, the magistrate found that Mr. Levy was not in custody at the time of questioning and that his statements were neither the product of coercive police conduct nor made other than of his own free will. The district court adopted the magistrate's report and recommendation and specifically found that Mr. Levy was not in custody and therefore no *Miranda* warnings were required. Our examination of the record fully supports this conclusion.

Levy was not subjected to physical restraint which is ordinarily associated with a custodial interrogation. The atmosphere in the store was relaxed. The agents were in plain clothes and no weapons were displayed. There was no limitation on Levy's freedom of movement. Although both his wife and an employee briefly left the store on different occasions, Levy himself was never asked to leave—or not to leave the premises. Levy was repeatedly told that he would not be arrested that night, although the information they had would likely result in a revocation of his parole. The agents indicated they wanted to gain his cooperation and that his cooperation would be reported to the United States Attorney. He was specifically told that he was under no obligation to talk, and could leave at any time.

At the suppression hearing, the magistrate had the opportunity for a first hand evaluation of the credibility of the witnesses. Although Levy testified that he believed that he was under arrest at the time of the questioning, the magistrate discredited this testimony as of recent invention and inconsistent with his own witness. There is no indication that this credibility determination by the magistrate (adopted by the district judge) was clearly erroneous.

Under these circumstances, we hold that the district court did not err in deciding that Levy was not in custody when he made the incriminating statements and that there was no requirement to provide him with the *Miranda* warnings.

*Voluntariness of the Statement*

 Levy also contends that the statement he gave was involuntary as the product of psychological coercion and intimidation. We disagree. " 'In contrast to the presumption of coercion that attends statements given during custodial interrogation in the absence of *Miranda* warnings, statements made during a noncustodial interrogation are not viewed with suspicion.' " *Fazio,* 914 F.2d at 956 (quoting *United States v. Serlin,* 707 F.2d 953, 958 (7th Cir.1983)). While the Supreme Court has recognized that even noncustodial interrogations " 'might possibly in some situations, by virtue of some special circumstances, be characterized as one where "the behavior of ... law enforcement officials was such as to overbear [a suspect's] will to resist and bring about confessions not freely self-determined," ' " [6] this is not such a situation. The test for determining whether a confession is voluntary is whether "the defendant's will was overborne at the time he confessed." *Id.*

 The record in this case does not support Levy's assertion that his will was overborne, or that his statement was the product of police coercion. In rejecting Levy's claim that his statements were induced by threats and improper interrogation techniques, the magistrate specifically found that "the interview was conducted in a nonthreatening environment, in a civil manner free of displays of force, intimidation or strong-arm tactics." The magistrate also found that Levy "appear[ed] to have responded in a calculated manner in furtherance of his own self-interest" to the agents' questions. These findings do not suggest the existence of "[c]oercive police activity," a necessary predicate to the find-

---

essentially factual and thus subject to a clearly erroneous review). Thus the precedential value of *Hocking's* indication that a *de novo* review would be appropriate under these circumstances is vitiated.

6. *Fazio,* 914 F.2d at 956 (quoting *Beckwith v. United States,* 425 U.S. 341, 347–48, 96 S.Ct. 1612, 1616–17, 48 L.Ed.2d 1 (1976) (quoting *Rogers v. Richmond,* 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961))).

ing that a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment. *United States ex rel. Link v. Lane,* 811 F.2d 1166, 1170 (7th Cir.1987).[7] We accordingly conclude that Levy's statements on June 26, 1990 were voluntarily made to the drug agents.

*Sentence Enhancement*

■ Levy contends that the indictment did not adequately notify him of the government's intention to seek an enhanced sentence under § 841(b)(1)(B) and thereby violated his due process rights. The portion of the indictment which Levy now challenges read as follows:

> From on or about July 1, 1988, until on or about March 21, 1989, ... ROBERT A. LEVY knowingly and unlawfully conspired and agreed with Randall E. Wagner and others ... to violate Title 21, United States Code, Sec. 841(a)(1). by agreeing to knowingly and intentionally distribute cocaine, a schedule II narcotic controlled substance.

Levy acknowledges that the government, pursuant to the requirements of 21 U.S.C. § 851(a),[8] notified him before trial of its intention to seek enhancement of his sentence based on his prior felony conviction. That statutorily required notice also included the additional information that there was a possibility of an enhanced penalty based on the more than 500 grams of cocaine involved in the conspiracy. Nevertheless, he argues that because the indictment did not specifically allege that he was responsible for more than 500 grams of cocaine, the imposition of an enhanced penalty under § 841(b)(1)(B) is impermissible.

To support this contention, Levy cites this court's decision in *United States v. Paiz* for the proposition that an indictment must apprise the defendant of the possibility that enhanced penalty provisions could apply. 905 F.2d 1014, 1033 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1319, 113 L.Ed.2d 252 (1991).

In *Paiz,* we considered whether an enhanced sentence could be imposed under § 841(b)(1)(B) for a conviction of a § 846 count if the amount of drugs involved is only alleged in the overt acts portion of the indictment. Relying on the Third Circuit's decision in *United States v. Gibbs,* 813 F.2d 596 (3rd Cir.), *cert. denied,* 484 U.S. 822, 108 S.Ct. 83, 98 L.Ed.2d 45 (1987), we held that although § 841(b)(1)(B) is a penalty provision which did not have to be alleged to obtain a conspiracy conviction, the defendant was nonetheless entitled to notice "of the possibility that enhanced penalty provisions could apply." *Paiz,* 905 F.2d at 1032–33. *See also United States v. Acevedo,* 891 F.2d 607, 611 (7th Cir.1989); *United States v. Ocampo,* 890 F.2d 1363, 1373 (7th Cir.1989). In *Paiz,* we did not set out alternative methods by which sufficient notice of § 841(b) enhancement might be given, nor, significantly, did we specify that such notice must be provided by the indictment itself. We only concluded that the indictment in that case, when viewed as a whole, comprising both overt acts and substantive counts, fairly informed Paiz that the amount of marijuana involved might subject him to the enhanced penalty provision of § 841(b)(1)(B). *Paiz,* 905 F.2d at 1033.

While we agree that Levy is entitled to receive notice of the possibility of an en-

---

7. Levy makes much of the fact that the agents did not immediately identify themselves as law enforcement officers upon entering the store. The magistrate found that the agents correctly withheld their identities until they determined that they were speaking with Robert and Hyacinth Levy. We see no reason to question this finding.

We likewise reject Levy's assertion that his statements were involuntary because one of the officers told him that he would eventually be arrested. As the magistrate indicated, even assuming that the agent had made such a statement, it would not have been improper in light of *United States v. Hocking* because it would

have been merely a "realistic appraisal of [the] defendant's predicament."

8. 21 U.S.C. § 851 states in pertinent part:

· (a)(1) No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851.

hanced sentence based on the weight of the drugs involved, *Paiz* should not be construed to require that such notice be provided by the indictment. The issue regarding the weight of drugs under § 841(b) relates to the sentencing factor, not an element of the offense. *Id.* Because it is not an element of the offense, the quantity of drugs is not an issue for jury determination. As we have made clear, "facts germane only to sentencing are resolved by the judge not the jury." *United States v. Smith*, 938 F.2d 69, 70 (7th Cir.1991). By limiting our discussion in *Paiz* to the sufficiency of notice as provided by the indictment, we did not intend to discount the other means of notice concerning sentence enhancement which would meet due process requirements.

▇▇▇ Indeed, there is a specific point at which disputed facts affecting only the length of a sentence are resolved. Rule 32 of the Federal Rules of Criminal Procedure and §§ 6A1.1 through 6A1.3 of the United States Sentencing Guidelines require the district court to give a defendant notice of factors which may be used to determine his sentence. Notice contemplated by the Rule and Guidelines comes post-conviction, not pretrial.

When the defendant receives notice of the facts upon which the district judge intends to rely for imposition of sentence, the defendant may dispute those facts and the court must provide a procedure by which the defendant is given an opportunity to be heard on those issues. *See* Rule 32(a)(1) and U.S.S.G. § 6A1.3. The defendant may contest any issue of fact (such as the quantity of drugs involved in an offense) which will affect his sentence.

▇▇▇ The Sentencing Guidelines, of course, acknowledge that "... quantities of drugs not specified in the count of conviction may be considered in determining the offense level." U.S.S.G. § 2D1.1, comment (n. 12). The district judge may consider evidence from the trial in making his or her determination concerning drug quantities. However, even though a jury may return a special verdict regarding drug quantities, the district judge must make an independent determination on that issue. *See Smith*, 938 F.2d at 70.

There appears to us to be no difference between the application of the enhancement provisions under § 841(b) and the application of those enhancement factors found in the Sentencing Guidelines. "The elements of § 841(b) ... are to be considered by the court at sentencing after a jury finding of guilt." *United States v. McNeese*, 901 F.2d 585, 605 (7th Cir.1990). The same is true in the application of the Sentencing Guidelines.

In this case, Levy received notice of the possibility of enhancement of any sentence based on drug quantities five days in advance of trial. That pretrial notice involving enhancement for drug quantities was not required, but merely was additional information which accompanied the statutory notice of prior convictions which was required by § 851(a).

The notice provided to Levy concerning the possibility of enhancement of his sentence based on the quantity of the drugs involved was more than adequate. There is no indication that he lacked sufficient time or opportunity to contest the § 841(b)(1)(B) sentence enhancement factors at the time of sentencing. There was no infringement upon Levy's due process rights.

*Acceptance of Responsibility and Amount of Cocaine*

Levy makes two other challenges related to his sentencing: (1) the district court committed reversible error by denying him a two-level reduction for acceptance of responsibility; and (2) the district court's determination of the amount of cocaine was incorrect.

▇▇▇ The district court specifically set forth, both at the sentencing hearing and in its written judgment, the reasons underlying its decision to deny Levy a reduction for acceptance of responsibility. The court found that Levy persisted in denying that he had distributed six pounds of cocaine, and also noted that the defendant's "belated remorse does not suggest the timeliness of conduct manifesting the acceptance of responsibility." We cannot say that this finding was clearly erroneous and therefore warrants reversal. *See United States v. Brick*, 905 F.2d 1092, 1095 (7th Cir.1990).

Levy's assertion that the district court incorrectly calculated the amount of cocaine involved is similarly flawed. The law is well-settled that the amount of cocaine involved in the conspiracy is a question of fact for the trial court's determination. *United States v. Ocampo*, 890 F.2d 1363, 1372–73 (7th Cir.1989). The most that Levy can establish in this case, however, is that another permissible view of the evidence exists; he simply questions the district court's decision to credit an officer's testimony that Levy admitted to delivering six to eight pounds of cocaine. Again, the district court is in the best position to evaluate the credibility of witnesses appearing before it. In this case, we have been given no reason to hold otherwise.

### III.

For the foregoing reasons, we AFFIRM Robert A. Levy's conviction and sentence.