Duwane WILLIAMS, Plaintiff,

v.

Officer Michael HUTCHENS and Downers Grove Police Department, Defendants.

No. 93 C 923.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 2, 1994.

Duwane Williams, pro se.

Michelle J. Jacobs–Caley, Roddy, Power, Leahy, Guill, Zima & Gifford, Chicago, IL, for Officer Hutchens and Downers Grove Police Dept.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Duwane Williams brings this *pro se* action under 42 U.S.C. § 1983 against Michael Hutchens, a Downers Grove police officer, and the Downers Grove Police Department. He seeks damages for violations of his constitutional rights that he alleges Hutchens committed during an arrest and interrogation on March 1, 1992. Both defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, defendants' motion is granted in part and denied in part.

## FACTS

According to the complaint, on March 1, 1992, Williams was stopped near 1320 75th Street in Downers Grove, Illinois, by Officer Hutchens. Hutchens asked Williams for identification and Williams produced it. Hutchens then searched Williams. Williams asked whether he was under arrest, and Hutchens said no, but Williams says he was not able to leave. Hutchens reached inside Williams' jacket, removed a checkbook from his shirt pocket and opened the checkbook to examine it. Williams was then held by other officers for about twenty minutes while Hutchens left and returned several times. Finally, Williams was put in a squad car, driven to the nearby Service Merchandise store to be identified by witnesses, and placed under arrest for forgery. On the way to the police station, Hutchens told Williams that he would be charged with a misdemeanor (Cplt. ¶¶ 1–3).

When they arrived at the station, Hutchens reached for Williams' crotch area. Williams jumped back. Hutchens told him to lower his pants, and Williams refused, so Hutchens placed his hand down Williams' pants and removed some evidence (Williams does not specify what kind of evidence) (Cplt. ¶ 3).

Williams was then asked to make a statement. When he refused, Hutchens told him that he would be charged with burglary, a felony, instead of the misdemeanor. Williams said he would make a statement about the misdemeanor charge but not the felony charge, and was placed in a room to make his statement. Hutchens checked in with Williams several times to see how the statement was going. At one point, Williams told Hutchens that he really did not want to make a statement and that he thought it was a bad idea. Hutchens insisted that Williams make the statement. When Williams finished, he was given a Coke and a cookie,

which he claims was a reward for confessing (Cplt. ¶¶ 4–5).

Based on these alleged facts, Williams charges that Hutchens violated his constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments. He says that he was illegally searched, wrongfully detained, subjected to improper identification by witnesses, and coerced into confessing a crime (Cplt. ¶¶ 1–5). The complaint names as co-defendant the Downers Grove Police Department. Williams claims that the Department should be held responsible for the actions of both Hutchens and the other officers who observed Hutchens' allegedly illegal conduct and did nothing to stop it (Cplt. ¶¶ 6–7). In response, both defendants have moved this court to dismiss the complaint for failure to state a claim upon which relief can be granted.

### DISCUSSION

In ruling on a motion to dismiss, the court assumes the facts to be as stated in the complaint. In the case of plaintiffs proceeding *pro se*, like Williams, the court construes the complaint even more liberally than usual. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). Only if the plaintiff, even with the benefit of the assumptions in his favor, " 'cannot establish any set of facts which would entitle him to the relief requested,' " can the court dismiss the claim. *Caldwell v. City of Elwood*, 959 F.2d 670, 672 (7th Cir.1992) (quoting *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir.1991)).

### A. *Downers Grove Police Department*

The Downers Grove Police Department is merely an organizational division of the Village of Downers Grove and enjoys no separate legal existence. Therefore, Williams' claim against the Department must be dismissed with prejudice. *See Chan v. City of Chicago*, 777 F.Supp. 1437, 1442 (N.D.Ill.1991) (holding that the Chicago Police Department "has no separate legal existence apart from the City of Chicago" and "is therefore not a suable entity"); *Reese v. Chicago Police Department*, 602 F.Supp. 441, 443 (N.D.Ill.1984) (same).

Even if Williams had named the Village as defendant instead of the Department, we would be compelled to grant the motion to dismiss because Williams has not alleged sufficient facts to state a claim against the Village. Since Williams may choose to amend his complaint to name the Village as defendant instead of the Department, we address what such a claim would require.

The Supreme Court has established that municipal governments are not suable on a theory of *respondeat superior;* they are liable only for those civil rights violations that occur as a result of their official policies. *Monell v. Department of Social Services of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978) ("a municipality cannot be held liable under § 1983 on a *respondeat superior* theory"); *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) ("the entity's 'policy or custom' must have played a part in the violation of federal law"). Recently, in *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 734–35 (7th Cir.1994), the Seventh Circuit identified the three ways in which a plaintiff can prove the existence of a local government policy. He can point to an explicit policy promulgated through formal channels (such as an ordinance or code); show that the local government engaged in a practice "so permanent and well settled as to constitute a 'custom or usage' with the force of law," *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) (plurality opinion) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970)); *see also id.* at 138, 108 S.Ct. at 931 (Brennan, J., concurring); or allege that his injury was caused by a person with "final policymaking authority," *Praprotnik*, 485 U.S. at 123, 108 S.Ct. at 924; *id.* at 139, 108 S.Ct. at 932 (Brennan, J., concurring); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (plurality opinion).

Williams does not allege facts sufficient to state a claim against the Village under any of the three methods of proof mentioned above. He mentions no explicit

policy, nothing that could raise an inference of a custom or practice of unconstitutional conduct, and no fault on the part of anyone with final policymaking authority. As for a theory that the Village failed to train Hutchens adequately, *see City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), Williams has not alleged that "the [alleged] inadequacies resulted from conscious choice—that is, proof that the policymakers deliberately chose a [policy] which would prove inadequate"—as Supreme Court precedent requires. *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985). Therefore, even if Williams had named the Village as a defendant, he would not have stated a claim against the Village. If he chooses to amend his complaint to include the Village as a defendant, he must also include the proper elements of a § 1983 claim against a municipality or that claim too will be dismissed.

## B. Officer Michael Hutchens

 Williams does not specify whether he seeks relief against Hutchens in his individual or official capacity, or both. Ordinarily, complaints against public officials that do not say whether the official is being sued in his individual capacity or his official capacity are presumed to be official capacity claims. *Yeksigian v. Nappi,* 900 F.2d 101 (7th Cir.1990); *Kolar v. County of Sangamon,* 756 F.2d 564 (7th Cir.1985). However, the Seventh Circuit has indicated that this presumption

should give way where it is clear that the plaintiff may have intended something else or may not have understood the nuances of § 1983 liability. *Hill v. Shelander,* 924 F.2d 1370, 1373 (7th Cir.1991) (adopting a "sensible approach to reading a complaint so that suits may be maintained regardless of technical pleading errors"). It would not be fair to Williams, a *pro se* litigant, to adhere closely to the technicalities of § 1983 pleadings and construe his complaint as stating only an official-capacity claim or only an individual-capacity claim. Instead, we will give him the benefit of the doubt and treat his complaint as stating both claims.

 An official-capacity suit against a public official is really a suit against the governmental entity that employs the official. *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985) ("[i]t is *not* a suit against the official personally, for the real party in interest is the entity"). Therefore, a plaintiff pursuing such a suit must meet the pleading requirements for municipal liability. As explained above, Williams has not done so, so his official-capacity claim is dismissed without prejudice.

 The individual-capacity claim requires closer consideration. Williams alleges four [1] separate violations of his rights: (1) illegal search of his person before arrest, (2) illegal search after arrest, (3) improper identification by witnesses, and (4) coerced confession.[2] Each is discussed in turn.

---

1. Defendants suggest that Williams may also be attempting to allege a fifth claim for false arrest or illegal detention (Motion to Dismiss at 6–7). They claim that because he was convicted of the underlying offense, his false arrest and illegal detention claims are moot. It is true that "[w]hen an arrest is supported by probable cause, the arrestee cannot be said to have suffered a constitutional deprivation," *Myatt v. City of Chicago,* 816 F.Supp. 1259, 1266 (N.D.Ill. 1992), and that "proof of probable cause may be shown in the plaintiff's conviction of the underlying offense for which he was arrested." *Hornung v. Village of Park Forest,* 634 F.Supp. 540, 543 (N.D.Ill.1986). But nowhere in the complaint do we find any allegation that Williams was convicted of forgery; that allegation appears only in the defendants' pleadings and therefore may not be considered on a motion to dismiss. To the extent Williams' complaint alleges false arrest or illegal detention, then, it survives defendants' motion.

2. In his response to the defendants' motion, Williams further claims that he "did not and was not afforded the opportunity to [] knowingly waive his constitutional [r]ights" (Plaintiff's Response to Motion to Dismiss at 5). Although a plaintiff can supplement his complaint with additional evidence in response to a motion to dismiss or other pleading provided the evidence is consistent with the complaint, *Dawson v. General Motors Corp.,* 977 F.2d 369, 372–73 (7th Cir. 1992), he cannot raise claims in later pleadings that were not even suggested by the complaint, as Williams has attempted to do here. Moreover, "the reading of *Miranda* warnings is a procedural safeguard rather than a right arising out of the [F]ifth [A]mendment itself. Thus, the remedy for a *Miranda* violation is the exclusion from evidence of any compelled self-incrimination, not a section 1983 action." *Warren v. City of Lincoln,* 864 F.2d 1436, 1442 (8th Cir.), *cert. denied,* 490 U.S. 1091, 109 S.Ct. 2431, 104

■■ Williams' allegations concerning the pre-arrest search state a Fourth Amendment claim. Police officers may conduct brief warrantless searches for weapons (pat-downs) if they reasonably suspect a person of criminal activity. *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968). Here it is not clear from the complaint that Hutchens had any basis to suspect Williams of wrongdoing. Although Hutchens argues in his motion to dismiss that he had a legitimate basis for stopping Williams, motions to dismiss are decided on the basis of the complaint only, and we cannot consider any additional evidence until the summary judgment stage. *Orthmann v. Apple River Campground, Inc.,* 757 F.2d 909, 915 (7th Cir.1985) ("dismissal under Rule 12(b)(6) is proper only if *the allegations of the complaint* make clear that the plaintiff cannot state a claim") (emphasis added); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d Ed.1990) ("dismissal is justified only when the allegations of the complaint itself clearly demonstrate that plaintiff does not have a claim"). Furthermore, Williams also alleges that Hutchens reached inside his clothing to retrieve a checkbook. This was more than just a pat-down search and thus required probable cause. No basis for finding probable cause is evident from Williams' complaint. Accordingly, we must conclude that he has stated a cause of action under the Fourth Amendment.

■ Similarly, Williams' allegations that Hutchens illegally searched him by reaching into his crotch area after he was arrested state a Fourth Amendment claim. It is well settled that after a suspect has been lawfully arrested police may conduct a full search of his person to remove any weapons or to seize any evidence that might otherwise be concealed or destroyed. *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); *United States v. Trigg,* 878 F.2d 1037, 1039 (7th Cir.1989) ("a police officer may thoroughly search the person of a suspect after making a custodial arrest"), *appeal after remand,* 925 F.2d 1064 (7th Cir.), *cert. denied,* 502 U.S. 962, 112 S.Ct. 428, 116 L.Ed.2d 448, 449 (1991). Here, however, Williams' complaint gives us no reason to believe that the arrest was lawful, so we cannot say that the intrusive search that Hutchens allegedly conducted did not violate the Fourth Amendment. Therefore, this part of the complaint states a claim against Hutchens.

■ Williams' third allegation is that Hutchens violated his due process rights by presenting him to witnesses at Service Merchandise for identification.[3] Witness identification of a suspect, if "unnecessarily suggestive and conducive to irreparable mistaken identification," can violate the suspect's due process rights. *Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). A one-person lineup (or "showup"), although proper and not unduly suggestive in certain circumstances, *United States v. Clark,* 989 F.2d 1490, 1495 (7th Cir.1993), is clearly more suggestive than the typical multiple-person lineup. The Supreme Court has established a two-part test to determine whether showups and other lineups are proper: "First, the court must decide whether the police used an unduly suggestive pretrial procedure in obtaining an identification.... [T]hen the court must determine whether, under all the circumstances, that suggestive procedure resulted in a substantial likelihood of irreparable misidentification." *United States v. Flannigan,* 884 F.2d 945, 948 (7th Cir.1989) (citing *Manson v. Brathwaite,* 432

---

L.Ed.2d 988 (1989); *see also Thornton v. Buchmann,* 392 F.2d 870, 874 (7th Cir.1968) (failure to give *Miranda* warnings "would prevent the use of [the plaintiff's] statements in a criminal trial if hereafter commenced, but ... has no significance in the present [§ 1983] case"). Some authorities suggest that officers who disregard *Miranda* may be liable under § 1983, but only where the plaintiff alleges that the information so obtained was used against him at trial. *See Cooper v. Dupnik,* 963 F.2d 1220 (9th Cir.) (en banc), *cert. denied,* —— U.S.

——, 113 S.Ct. 407, 121 L.Ed.2d 332 (1992); Sheldon H. Nahmod, *Civil Rights and Civil Liberties Litigation: The Law of Section 1983* at § 3.06 (3d ed. 1991). Williams has not done so.

**3.** To the extent Williams is asserting that he was humiliated by being paraded in front of witnesses after he was placed under arrest, this assertion is not a separate cause of action. Rather, it would go to the damages he could prove in support of a cause of action for unlawful arrest.

U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)), *cert. denied,* 497 U.S. 1027, 110 S.Ct. 3277, 111 L.Ed.2d 786 (1990).

■ To maintain a § 1983 action against Hutchens, Williams must allege not only that the identification was improper under the *Manson* test but also that the evidence derived from the identification prejudiced his right to a fair trial. *Hensley v. Carey,* 818 F.2d 646, 649–50 (7th Cir.), *cert. denied,* 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 395 (1987). *Stovall* and *Manson* set forth a prophylactic rule that protects a defendant's right to a fair trial; they "do not establish a right to an impartial lineup as long as the evidence gained through that lineup is not used at trial." *Id.* at 650. Williams' claim here consists only of the statement that Hutchens "drove me to Service Merchandise to be viewed" (Cplt. at 1). He alleges no prejudice at trial, such as a witness who was at the showup and then identified Williams in court, that could lead us to impose § 1983 liability upon Hutchens.

Moreover, even if Williams had alleged prejudice, his claim will ultimately fail if he was convicted and the conviction stands. In claiming that Hutchens conducted an improper showup and that his right to a fair trial was prejudiced thereby, Williams would effectively be claiming that his conviction—the only damage he could have suffered as a result of an improper identification—was invalid. The Supreme Court recently held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck v. Humphrey,* —— U.S. ——, ——, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994). If Williams claimed that the showup prejudiced his right to a fair trial he would be seeking relief for "actions whose unlawfulness would render [his] conviction or sentence invalid." *Id.* Therefore, he would have to show that his conviction has been invalidated, as explained in *Heck.*

Finally, Williams claims that Hutchens forced him to confess his crime by threatening him with prosecution for a more serious offense and by intimidating him.[4] Generally, confessions are valid if they are "not secured through psychological or physical intimidation but rather [are] the 'product of a rational intellect and free will.'" *United States v. Haddon,* 927 F.2d 942, 945 (7th Cir.1991) (quoting *United States v. Holleman,* 575 F.2d 139, 142 (7th Cir.1978)). To state a § 1983 claim against Hutchens on this issue, Williams must allege both that Hutchens violated his due process rights by coercing him to confess and that the confession caused him some injury. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912–13, 68 L.Ed.2d 420 (1981) (requiring as threshold for § 1983 liability that defendant acted under color of state law and that his action deprived plaintiff of rights protected by the Constitution or federal law); *Benson v. Cady,* 761 F.2d 335, 339 (7th Cir.1985) (requiring breach of constitutional duty by state actor, causation, and actual damage).

■ The Supreme Court has established that "a confession obtained through custodial interrogation after an illegal arrest" is coerced and therefore inadmissible "unless intervening events break the causal connection between the illegal arrest and the confession" so that the confession is truly an act of free will untainted by the illegal arrest. *Taylor v. Alabama,* 457 U.S. 687, 690, 102 S.Ct. 2664, 2667, 73 L.Ed.2d 314 (1981). Temporal proximity is one factor that must be considered; if the confession is close in time to the illegal arrest, chances are good that the arrest has undercut the voluntari-

4. We do not address Williams' suggestion that Hutchens somehow induced him to confess by giving him a Coke and a cookie after he had finished his statement. Williams has not alleged that he was offered the reward before he made his statement, and even if he had done so we would not seriously entertain the notion that the offer of a Coke and a cookie, however tempting, could constitute coercive police behavior.

ness of the confession. *See Brown v. Illinois*, 422 U.S. 590, 604–05, 95 S.Ct. 2254, 2262–63, 45 L.Ed.2d 416 (1975) (confession given less than two hours after illegal arrest held inadmissible). Because we read Williams' complaint as challenging the legality of his arrest, we find that he has properly alleged that his confession, which closely followed that arrest, was coerced.

██ Williams' § 1983 claim must also allege that he suffered some kind of compensable injury. If his only damages are conviction and incarceration, then his action fails under *Heck* because, as explained above, a § 1983 action cannot be maintained if its successful outcome would necessarily imply that the plaintiff's conviction was invalid.[5] But if Williams can show any other damages that he suffered as a result of Hutchens' acts, he may pursue those claims. *See Heck,* —— U.S. at —— – —— n. 7, 114 S.Ct. at 2372–73 n. 7 (unreasonable search can be basis for § 1983 liability despite conviction if plaintiff can show "actual, compensable injury" other than the " 'injury' of being convicted and imprisoned"); *Duncan v. Nelson,* 466 F.2d 939, 945 (7th Cir.1972) (section 1983 plaintiff "may not recover damages for his conviction and incarceration [but] should be afforded an opportunity to present his proof concerning any harm which he allegedly suffered and which these defendants knew or should have known [he] would suffer as a result of the unlawful interrogation and confession"); *Rex v. Teeples,* 753 F.2d 840 (10th Cir.1985) (coerced confession is due process violation and an injury compensable under § 1983 even if plaintiff's conviction was reversed on

appeal). Williams does not allege any damages that resulted from the coerced confession, so his complaint fails to state a claim on this issue. We dismiss the complaint without prejudice and with leave to amend.

## CONCLUSION

For the foregoing reasons, Hutchens' motion to dismiss is granted without prejudice with respect to the allegations that he conducted an illegal identification and that he coerced Williams to confess. The motion is denied with respect to Williams' remaining claims against Hutchens. The claim against the Downers Grove Police Department is dismissed with prejudice.

---

**5.** The complete *Heck* analysis that yields this conclusion is actually considerably more complex. *Heck* requires that the court "consider whether a judgment in favor of the [§ 1983] plaintiff would necessarily imply the invalidity of his conviction or sentences; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding judgment against the plaintiff, the action should be allowed to proceed." —— U.S. at ——, 114 S.Ct. at 2372. We need not consider whether a conclusion that Williams was wrongfully forced to confess would necessarily imply the invalidity of the conviction. If he claims that being convicted was his injury and

that the admission of the coerced confession caused that injury, he implicitly admits that the confession was necessary to the conviction and, therefore, that it cannot be the basis for a § 1983 claim. This is because unlike evidence derived from an unreasonable search, which could still be admissible under the independent source or inevitable discovery doctrines, a coerced confession could never be admitted at trial without violating the defendant's rights. Therefore, if Williams alleges that the confession was admitted (as he must to support any claim that it led to his injury: a conviction), we must conclude that his § 1983 claim, if successful, would necessarily imply that the conviction was unlawful, and once we do so, *Heck* bars Williams from maintaining his claim as a § 1983 action.