**Charles BOOKER, Plaintiff,**

v.

**James WARD, Thomas Kelly, City of Chicago, a municipal corporation, William Owens, and Torrence Lewis, Defendants.**

**No. 90 C 4602.**

United States District Court,
N.D. Illinois,
Eastern Division.

May 9, 1995.

Paul A. Tanzillo, Johnson & Bell, Ltd., and Cecile L. Singer, Chicago, IL, for plaintiff.

Michael P. Monahan, and Patricia Jo Kendall, Asst. Corp. Counsel, City of Chicago, Law Dept., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

HART, District Judge.

Plaintiff Charles Booker brings this action against defendants City of Chicago and four Chicago police detectives, James Ward, Thomas Kelly, William Owens, and Torrence Lewis. The Amended Complaint contains two counts. Count I is a claim pursuant to 42 U.S.C. § 1983 in which it is alleged that the four detectives[1] are responsible for arresting him without probable cause. Count

II is a state law claim for malicious prosecution against the City, Kelly, and Ward. Defendants have moved to dismiss certain claims. Owens and Lewis, who were not named as defendants until the amended complaint was filed in February 1995, contend that Count I is untimely as to them. The City, Kelly, and Ward contend that Count II fails to state a claim because plaintiff does not satisfy the requirement that the state law proceeding be terminated in a manner indicative of his innocence.

 On a motion to dismiss, all the well-pleaded allegations of the complaint are taken as true and all possible inferences are drawn in plaintiff's favor. *Thompson v. Boggs,* 33 F.3d 847, 852 (7th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 1692, 131 L.Ed.2d 556 (1995); *City National Bank of Florida v. Checkers, Simon & Rosner,* 32 F.3d 277, 281 (7th Cir.1994). "A complaint need not narrate all relevant facts or recite the law, all it has to do is set out a claim for relief." *Hrubec v. National Railroad Passenger Corp.,* 981 F.2d 962, 963 (7th Cir. 1992). On the other hand, a court is not "required 'to ignore any facts set forth in the complaint that undermine the plaintiff's claim or assign any weight to unsupported conclusions of law.'" *Checkers,* 32 F.3d at 281 (quoting *Scott v. O'Grady,* 975 F.2d 366, 368 (7th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2421, 124 L.Ed.2d 643 (1993)). Although not alleged in the amended complaint, the parties agree that judicial notice may be taken of the state court rulings in plaintiff's related criminal proceedings. *See Mandarino v. Pollard,* 718 F.2d 845, 849 (7th Cir. 1983), *cert. denied,* 469 U.S. 830, 105 S.Ct. 116, 83 L.Ed.2d 59 (1984); *Dobiecki v. Palacios,* 829 F.Supp. 229, 232 (N.D.Ill.1993); 5A C.A. Wright & A.R. Miller, *Federal Practice & Procedure* § 1363 at 464–65 (2d ed. 1990).

For purposes of the motions to dismiss, the facts are as follows. On August 7, 1987, Booker learned that his fiancee had been murdered. Booker proceeded to the home of his fiancee, where he spoke with defendants Owens and Lewis. Booker agreed to go to

---

1. Defendant Steven Glynn was previously dismissed from this case and plaintiff has clarified that the City is not intended to be a defendant to Count I.

the police station with those officers, arriving at the police station around 11:30 a.m. Booker remained in a waiting area until about 2:00 p.m. At one point during that wait, Owens and/or Lewis inspected his hands, fingernails, shoes, feet, and ankles. At 2:00 p.m., defendants Kelly and Ward interrogated him and took him to police headquarters for a polygraph examination. Booker failed the polygraph test. After the results of the examination became known, Booker was formally placed under arrest. Booker subsequently gave statements that he had murdered his fiancee.

Booker was tried in the Circuit Court of Cook County, Illinois. At pretrial proceedings, Booker challenged the admissibility of his post-arrest statements on the ground that he had been arrested without probable cause. The trial court indicated there had not initially been probable cause to arrest him on the murder charges. However, it found that, following the polygraph results and an admission that Booker had falsely told the officers he had not been in the area of his fiancee's house the night of the murder, there was probable cause to arrest Booker for obstruction of justice charges. The trial court held that the existence of probable cause on those charges supported the arrest even if the officers had not subjectively relied on such charges. Booker's motion to suppress the statements was denied. Following trial before a jury, Booker was found guilty of murdering his fiancee and was sentenced to 30 years' imprisonment.

Booker appealed his conviction. In an opinion dated January 25, 1991, the Illinois Appellate Court reversed Booker's conviction and remanded the case for further proceedings. See People v. Booker, 209 Ill.App.3d 384, 154 Ill.Dec. 211, 568 N.E.2d 211 (1st Dist.1991) ("Booker I"). The Appellate Court held that, at sometime between 11:30 a.m. and 2:00 p.m. while Booker was waiting at the police station (that is, before his formal arrest), his voluntary presence at the police station became an involuntary arrest. Id. 154 Ill.Dec. at 217–18, 568 N.E.2d at 217–18. It was further held that, as of that time, probable cause did not exist to arrest him on murder charges. Id. at 218, 568 N.E.2d at

218. Alternatively, it was held that probable cause did not exist as of the time he was formally placed under arrest. Id. The trial court's reliance on there being probable cause to arrest Booker on an obstruction of justice charge was rejected on the ground that Booker was actually arrested prior to the polygraph examination or his admission that he had initially been untruthful about his whereabouts. Id. Alternatively, it was held that there was insufficient evidence to support probable cause for obstruction of justice and that, in any event, the arrest could not be justified by charges not relied upon by the police officers. Id. The Appellate Court, however, was unable to determine whether Booker's statements should be considered fruits of an unlawful arrest, an issue that had not been reached below because the trial court had found there was a lawful arrest. The prosecution had sought to present evidence that the statements were not causally related to the arrest, but the trial court declined to hear such evidence on the ground that the evidence already submitted had shown that the arrest was lawful. The Appellate Court, therefore, remanded the case for an "attenuation hearing" to determine whether any facts existed showing a break in any chain between the arrest and the statements. Id. at 218–19, 568 N.E.2d at 218–19.

Following the remand, the trial court heard further evidence. The trial court found that the statements were attenuated from the arrest because of the intervening circumstance of Booker being informed that his alibi was false. At his fiancee's home, Booker had told the officers that he had stayed at another girlfriend's house the night that his fiancee was murdered. That girlfriend, however, had told the police that Booker had not stayed there. The trial court again held that the statements were admissible and the conviction was reinstated. As a result of a second appeal, the Appellate Court held that the trial court's findings were against the manifest weight of the evidence because the alibi and denial had been obtained as a result of an arrest without probable cause that had occurred prior to the formal arrest and the evidence could not be a basis for finding the statements attenuated. People v. Booker, No. 92–0956, unpublished

order at 9–11 (1st Dist., Ill.App.Ct. Feb. 25, 1994) ("*Booker II*"). On October 11, 1994, the trial court dismissed the charges upon the prosecution's motion for a *nolle prosequi* order.

The first question to be resolved is when plaintiff's claims under § 1983 accrued for purposes of applying the applicable two year statute of limitations. In order to resolve this question, it is necessary to identify the nature of the § 1983 claim. Here the claim is for false arrest in violation of the Fourth Amendment because probable cause did not exist to detain plaintiff.

Central to the statute of limitations argument made by Owens and Lewis is key language in a recent Supreme Court decision, *Heck v. Humphrey*, —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). The Supreme Court stated:

> We hold that in order to recover damages for … harm caused by actions whose unlawfulness would render a conviction or sentence invalid,[fn6] a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254…. [T]he district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; … [I]f the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed,[fn7]. …

fn6. An example of this …—a § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful—would be the following: A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally prevent-

ing a peace officer from effecting a *lawful* arrest. [Citations omitted.] He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted….

fn7. For example, a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, [citations omitted], and especially harmless error, [citation omitted], such a § 1983 action even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful. In order to recover compensatory damages, however, the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, [citations omitted], which we hold today does *not* encompass the "injury" of being convicted and imprisoned (until his conviction has been overturned).

*Id.* at —— & nn. 6–7, 114 S.Ct. at 2372 & nn. 6–7 (emphasis in original).

Plaintiff contends success on the arrest without probable cause claim would necessarily imply that his previously existing conviction was invalid because it would have implied that his statements were based on an unlawful arrest and therefore not admissible. Therefore, he contends that he could not bring this claim until after his conviction had been vacated by the trial court in October 1994. Defendants focus on the language of footnote 7 and contend that a successful challenge to the lawfulness of his arrest does not "*necessarily* imply" the invalidity of the conviction because the conviction could still have been upheld on the ground that the statements were attenuated from the arrest or there may have still been other evidence to support his conviction. Therefore, they contend that the claim accrued when Booker was arrested in August 1987.[2] Alternatively, defendants contend that the claim accrued in January 1991 when the Illinois Appellate Court first reversed the conviction.

2. At the time, Illinois law provided that the running of limitations periods were tolled for persons who were imprisoned on criminal charges. *See* Ill.Rev.Stat. ch. 110, ¶ 13–211 (now codified as amended 735 ILCS 5/13–211). The tolling

provision for incarcerated individuals was deleted effective January 1, 1991. Therefore, if defendants are correct, plaintiff needed to bring his claim by January 4, 1993 (the first court day after the New Year's Day holiday).

The application of *Heck* to unlawful arrest and unlawful search or seizure[3] claims has varied. Some courts have held, without expressly considering footnote 7 of *Heck*, that finding for a plaintiff on a Fourth Amendment claim necessarily implies the invalidity of the related criminal proceeding. *See Jackson v. Vannoy*, 49 F.3d 175, 177 (5th Cir.1995) (per curiam); *Seaton v. Kato*, 1995 WL 88956 *5 (N.D.Ill. March 1, 1995) (noting that the Illinois Appellate Court had vacated the conviction upon holding that the arrest was unlawful and the related confession should have been suppressed); *Jackson v. Ludvick*, 1995 WL 42256 *1 (S.D.N.Y. Feb. 2, 1995) (false arrest claim).[4] *See also Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir.1995) (per curiam) ("if [claimant] is convicted and evidence is presented by the prosecution at his criminal trial which is a direct or indirect product of one or more of his arrests, then his section 1983 damage claims challenging the validity of his arrests would appear to undermine the validity of his conviction and hence be barred by *Heck* "). One court cited footnote 7 of *Heck*, but relied on the state court's actual reversal of convictions based on suppression of evidence to hold that the Fourth Amendment claims necessarily implied the invalidity of the conviction. *See Woods v. Candela*, 47 F.3d 545, 546 (2d Cir. 1995) (per curiam). *Cf. Seaton*, 1995 WL 88956 at *5. Other courts, citing footnote 7 of *Heck*, indicate that an unlawful arrest claim does not accrue at the time of the arrest unless it is shown that a finding of unlawful arrest would be harmless error or would otherwise not affect the related conviction. *See Lowman v. Town of Concord*, 1995 WL 108224 *2 (W.D.N.Y. March 7, 1995); *Williams v. Hutchens*, 870 F.Supp. 857, 864 n. 5 (N.D.Ill.1994). *See also Cordero v. Bobko*, 1995 WL 221879 *1 (N.D.Ill. April 12, 1995) (since plaintiff had pleaded guilty, unlawfulness of his arrest could not affect the

validity of his conviction). Some courts have relied on footnote 7 of *Heck* in apparently holding that the accrual of a claim for an unlawful search cannot possibly be delayed by a pending criminal proceeding. *See Snyder v. City of Alexandria*, 870 F.Supp. 672, 685, 687–88 (E.D.Va.1994); *Powers v. Sickler*, 1995 WL 146272 *5 (N.D.N.Y. March 31, 1995); *Ludvick*, 1995 WL 42256 at *1. Some courts, citing footnote 7 of *Heck*, indicate that, while there is a pending conviction, the plaintiff cannot obtain damages for having being incarcerated, but the Fourth Amendment claim still accrues as of the time of the unlawful conduct because there are other types of damages that the plaintiff may obtain. *See Trimble v. City of Santa Rosa*, 49 F.3d 583, 585 (9th Cir.1995) (per curiam); *Hutchens*, 870 F.Supp. at 864. *Cf. Ludvick*, 1995 WL 42256 at *1 (no damages for incarceration resulting from unlawful search because having a pending conviction means claim must be dismissed when no other damages alleged); *Olsen v. Correiro*, 1994 WL 548111 *4 (D.Mass. Sept. 26, 1994) (although conviction for murder had been vacated by state court, plaintiff then pleaded guilty to manslaughter and was credited for time served; federal court held plaintiff not entitled to damages for time served on murder conviction that resulted from unlawful conduct, but could obtain damages for other injury if there were any and was entitled to nominal damages). *But cf. Jerricks v. Bresnahan*, 880 F.Supp. 521, 526 (N.D.Ill.1995) (no possible damages for illegal search except those directly related to the underlying criminal conviction and such damages are barred by *Heck* if plaintiff's criminal conviction has not been vacated). Some courts, considering unlawful arrest claims, have distinguished footnote 7 of *Heck* on the ground that unlawful arrest claims (unlike unlawful search claims) necessarily go to the merits of the conviction,[5] *Powers*, 1995 WL 146272 at

---

3. For purposes of applying *Heck*, unlawful search or seizure claims are legally similar to unlawful arrest claims in that, in the criminal case, they often are related to questions of suppressing evidence. For convenience, the term "Fourth Amendment claims" will be used to refer jointly to unlawful search, unlawful seizure, and unlawful arrest claims.

4. *Ludvick* cites footnote 7 in regard to an unlawful search claim, but does not consider it in regard to the false arrest claim.

5. *Powers* and *Dawkins* rely in part on Second Circuit law that a valid conviction precludes a finding that probable cause to arrest did not exist. *See Cameron v. Fogarty*, 806 F.2d 380, 387–88 (2d Cir.1986), *cert. denied*, 481 U.S. 1016,

*6; *Dawkins v. City of Utica, New York,* 1994 WL 675047 *3 & n. 2 (N.D.N.Y. Nov. 28, 1994), or because confessions related to unlawful arrests, unlike evidence found during unlawful searches, cannot be admitted on independent source or inevitable discovery grounds.[6] *Hutchens,* 870 F.Supp. at 864 n. 5.

In footnote 6 of *Heck,* —— U.S. at —— n. 6, 114 S.Ct. at 2372 n. 6, the Court gives an example of what it means by claims involving "actions whose unlawfulness would render a conviction or sentence invalid." *Id.* at ——, 114 S.Ct. at 2372. The example is a criminal offense where the lawfulness of the arrest is itself an element of the offense. That is not the situation in the present case. While the example is not exhaustive of what might constitute such an action, it implies that the Supreme Court was not referring to federal causes of action that merely had overlapping evidentiary issues with related criminal proceedings. Footnote 7 of *Heck,* —— U.S. at —— n. 7, 114 S.Ct. at 2372 n. 7, indicates that federal causes of action that are related to suppression of evidence issues in the criminal proceeding would never be a cause of action that cannot exist while a valid conviction is pending. That footnote states that, because of rules like independent source and harmless error (and in the present case attenuation), such causes of action "would not" necessarily imply the invalidity of a conviction. The Supreme Court did not say "might not" or "may not," it said *"would not."* Also, there is no indication by the Supreme Court that the particular circumstances of the criminal case are to be considered. *Heck,* therefore, should be read as holding that there is an absolute rule that § 1983 claims that are merely related to admissibility of evidence issues in criminal proceedings are not prevented from accruing because of the existence of a pending conviction.[7] *See Heck,* —— U.S. at —— n. 7, 114 S.Ct. at 2372 n. 7; *Snyder,* 870 F.Supp. at 685, 687–88; *Powers,* 1995 WL 146272 at *5; *Ludvick,* 1995 WL 42256 at *1. While no damages for having been incarcerated can be obtained until the conviction is vacated, the claim accrues when the unlawful conduct occurs and the plaintiff is entitled to damages for whatever other injuries he or she may

107 S.Ct. 1894, 95 L.Ed.2d 501 (1987). That, however, is not necessarily the law in the Seventh Circuit. *See King v. Goldsmith,* 897 F.2d 885, 886 (7th Cir.1990), *cert. denied,* —— U.S. ——, 115 S.Ct. 937, 130 L.Ed.2d 882 (1995) (citing the split among the circuits and leaving the question open in the Seventh Circuit); *Jerricks v. Bollin,* 1994 WL 117465 *2 (N.D.Ill. March 28, 1994) (following *Cameron*); *Cordero,* 1995 WL 221879 at *1 (holding that question of probable cause to arrest and guilt on a later conviction are distinct). But even if the rule stated in *Cameron* is also the law in this circuit, *Powers* and *Dawkins* rely on a logical error. That a conviction conclusively determines that there was probable cause for an arrest does not have a logical corollary that lack of probable cause to arrest determines there was insufficient evidence to convict so that a challenge to probable cause to arrest must be a challenge to a conviction. *See Goldsmith,* 897 F.2d at 886–87. In other words, A implies B does not have the logical correlation that not-B implies not-A.

6. *Hutchens* indicates that the plaintiff in that case necessarily was challenging the use of his confession. As Booker's case indicates, however, it is possible to give statements subsequent to an unlawful arrest that are still admissible because attenuated from the arrest. *See generally United States v. Fazio,* 914 F.2d 950, 957–58 (7th Cir. 1990). Also, not every unlawful arrest and conviction involves incriminating statements being made to the police while the suspect is in custody.

7. To hold otherwise, as have cases such as *Woods,* 47 F.3d at 546, and apparently *Seaton,* 1995 WL 88956 at *5, would require that the plaintiff speculate at the time of the allegedly unlawful conduct (or within the applicable limitation period) whether success on the claim would undermine a conviction or instead be held to be harmless error or otherwise of no effect on the conviction. In the present case, it was more than six years after the allegedly unlawful arrest before it was finally determined in the state proceedings that the arrest was without probable cause and the statements were connected with the illegal arrest. If the Appellate Court had instead affirmed the trial court's finding of attenuation, it would have been too late to then file the false arrest claim which (under the *Woods* and *Seaton* analysis) would then be deemed to have accrued when Booker was first arrested. If a litigant were to seek to protect himself or herself by filing a § 1983 suit within two years of an arrest while simultaneously pursuing a challenge to the related conviction based on statements derived through the unlawful arrest, he or she would be forced to argue in the § 1983 suit that the unlawful arrest would not affect his conviction while taking the contrary position in the criminal litigation. The Supreme Court did not intend to place a litigant in that situation.

have suffered.[8] *See Heck*, —— U.S. at —— n. 7, 114 S.Ct. at 2372 n. 7; *Trimble*, 49 F.3d at 585; *Hutchens*, 870 F.Supp. at 864. *Cf. Ludvick*, 1995 WL 42256 at *1; *Olsen*, 1994 WL 548111 at *4.

■■■ Applying this rule to the present case, plaintiff's Count I arrest without probable cause claim accrued in August 1987[9] and the statute of limitations on that claim expired in January 1993, two years after the statutory tolling provision for imprisoned convicts was deleted from Illinois law.[10] Therefore, plaintiff's February 1995 attempt to add Owens and Lewis as defendants was untimely. The claims against those defendants will be dismissed.

■■■ The other three defendants seek to dismiss the Count II state law malicious prosecution claim on the ground that Booker's criminal proceeding was not terminated in a manner indicative of innocence. The parties agree that termination of the criminal proceeding in favor of Booker is an element of his malicious prosecution claim, *Dobiecki*, 829 F.Supp. at 234 (quoting *King v. Avila*, 760 F.Supp. 681, 683 (N.D.Ill.1989)), and that the *nolle prosequi* order in the criminal proceeding was a termination in Booker's favor. The parties also agree that success on this claim requires that the termination of the

criminal proceeding be indicative of innocence; that dismissing the criminal case in a manner that leaves the question of the defendant's innocence unresolved is insufficient. *Dobiecki*, 829 F.Supp. at 235. Further, the parties agree that determining whether the dismissal was indicative of innocence turns on the question of whether excluding Booker's statements should be considered to be based on the unreliability of that evidence. The parties agree that *Dobiecki*, 829 F.Supp. at 235–36, accurately states the law in Illinois:

The better rule is that the particular circumstances of each case must be considered to determine whether the dismissal following suppression of evidence should be considered indicative of innocence. *See [Union Oil of California v.] Watson*, 468 So.2d [349,] 353 [ (Fla.Dist.Ct.App.), *review denied*, 479 So.2d 119 (Fla.1985) ]. If the circumstances show that unreliable evidence has been suppressed and the prosecution then abandons the case because of lack of sufficient reliable evidence, that would be a circumstance where the dismissal is indicative of innocence, just as any dismissal for lack of proof is generally considered indicative of innocence. *See Bryant [v. Whalen]*, 759 F.Supp. [410], 419 [ (N.D.Ill.1991) ]; *Wynne v. Rosen*, 391

---

**8.** This rule means that a plaintiff who is ultimately successful in challenging his criminal conviction may have to bring his § 1983 suit for an unlawful arrest, search, or seizure prior to being able to obtain the full amount of his damages. It also means that the court hearing the civil suit may be considering Fourth Amendment claims that are also before the court hearing the criminal case. Therefore it may often be appropriate to stay proceedings or abstain in the § 1983 suit while challenges to the criminal conviction are pending.

**9.** Although the Amended Complaint only expressly seeks damages for imprisonment resulting from the allegedly unlawful arrest, damages that could not have been obtained while there was a pending conviction, plaintiff also could seek damages for the time he was detained prior to when he could properly have been arrested or he could have sought nominal damages. *See Davet v. Maccarone*, 973 F.2d 22, 29 (1st Cir.1992); *Raysor v. Port Authority of New York & New Jersey*, 768 F.2d 34, 39 (2d Cir.1985), *cert. denied*, 475 U.S. 1027, 106 S.Ct. 1227, 89 L.Ed.2d 337 (1986); *United Steelworkers of America v. Milstead*, 705 F.Supp. 1426, 1439 (D.Ariz.1988).

**10.** Plaintiff filed his suit *pro se* in August 1990. In October 1991, counsel was appointed to represent him. In February 1992, the case was dismissed with leave to reinstate within 60 days after disposition of the state court proceedings. The case was reinstated in November 1994 and the amended complaint naming Owens and Lewis was filed in February 1995. Arguably, the statute of limitations was tolled during the time the case was dismissed. *See Heck v. Humphrey*, 997 F.2d 355 (7th Cir.1993), *aff'd on other grounds*, —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). But even if that tolling rule would otherwise apply, it does not apply because of a lack of diligence during the 18 months the case was pending before it was dismissed. Owens's and Lewis's participation was known well before February 1992; they testified in the trial court before the civil case was filed and are specifically mentioned in *Booker I*, which was decided in January 1991. Since plaintiff did not act diligently in adding these defendants before the case was first dismissed, equitable tolling cannot apply. *See generally, Heck*, 997 F.2d at 357 (requiring diligence during all pertinent proceedings).

Mass. 797, 464 N.E.2d 1348, 1351 (1984). If a confession is suppressed because involuntarily coerced, then the evidence was not reliable and a subsequent voluntary dismissal based on lack of evidence would be indicative of innocence. On the other hand, if the evidence was only suppressed on "technical" grounds having no or little relation to the evidence's trustworthiness, then the fact that there was not other sufficient evidence would not be indicative of innocence. *Cf. Rich v. Baldwin,* 133 Ill.App.3d 712, [88 Ill.Dec. 748, 752] 479 N.E.2d 361, 365 (5th Dist.1985); *Bryant,* 759 F.Supp. at 419; *Wynne,* 464 N.E.2d at 1351; *Scannell v. Riverside County,* 152 Cal.App.3d 596, 199 Cal.Rptr. 644, 652 (1984); *Watson,* 468 So.2d at 353.

Plaintiff contends that suppression of a statement that is causally related to an illegal arrest is necessarily based on involuntariness because the voluntariness of a statement is a consideration in attenuation analysis. However, the exclusionary rule that prohibits the use of evidence causally related to an arrest without probable cause is a prophylactic rule "whose 'prime purpose is to deter future unlawful conduct'" by police officers. *United States v. Fazio,* 914 F.2d 950, 957 (7th Cir.1990) (quoting *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974)). It does not necessarily follow that a statement that is a fruit of an arrest without probable cause is involuntary. Voluntariness of the statement is a consideration in determining whether the statement is attenuated from the police misconduct. However, a number of factors are considered, with the voluntariness of the statement being a "threshold requirement" for finding the statement to be attenuated from the police misconduct. *Fazio,* 914 F.2d at 957 (quoting *Brown v. Illinois,* 422 U.S. 590, 604, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975)). Thus, a statement being voluntary is a necessary requirement for finding the statement to be attenuated, but it is not a sufficient requirement. *Id.; United States v. Patino,* 862 F.2d 128, 132 (7th Cir.1988), *cert. denied,* 490 U.S. 1069, 109 S.Ct. 2072, 104 L.Ed.2d 637 (1989). A voluntary statement will still be suppressed if the other factors go against finding the statement to be attenuat-

ed from the police misconduct. *Cf. People v. Koniecki,* 135 Ill.App.3d 394, 90 Ill.Dec. 173, 180, 481 N.E.2d 973, 980 (2d Dist.1985) (voluntary consent to search); *United States v. Klopfenstine,* 673 F.Supp. 356, 360 (W.D.Mo. 1987) (same). One of the factors to be considered is the presence of an intervening circumstance. *See Fazio,* 914 F.2d at 957 (quoting *Patino,* 862 F.2d at 132).

In Booker's criminal proceeding, the Illinois Appellate Court held that Booker's statements were not attenuated from the illegal arrest primarily because there were no intervening circumstances between the illegal arrest and his statements. *Booker II* at 10. The Appellate Court held that any intervening circumstance is the most important factor to consider in attenuation analysis. *Id.* (citing *People v. Beamon,* 255 Ill.App.3d 63, 194 Ill.Dec. 200, 203, 627 N.E.2d 316, 319 (1st Dist.1993)). It did not even consider whether the statements were voluntary. Since Booker's criminal proceeding was dismissed without any finding that his statements were involuntary, there is no basis for considering his statements to have been unreliable. Therefore, the dismissal following suppression of the statements is not indicative of innocence since, with the statements, there would have been sufficient evidence to proceed to trial.

Since plaintiff cannot satisfy the requirement of having had his criminal proceeding dismissed in a manner indicative of his innocence, Count II will be dismissed. Since that is the only claim against the City, the City will be dismissed from the case.

This case remains before the court on the charges of arrest without probable cause in violation of the Fourth Amendment. Plaintiff may seek to recover damages for improper detention during the period prior to his arraignment. *Heck,* —— U.S. at ——, 114 S.Ct. at 2371; *Hygh v. Jacobs,* 961 F.2d 359, 366 (2d Cir.1992). The remaining defendants are not bound by the decisions of the Illinois Appellate Court in *Booker I* and *Booker II;* they may defend plaintiff's claim by seeking to show under federal law that there was probable cause to arrest plaintiff.

IT IS THEREFORE ORDERED that defendants' motions to dismiss [69, 70, 78] are granted. Count II of the amended complaint is dismissed and defendants City of Chicago, William Owens, and Torrence Lewis are dismissed from the case. Defendants shall answer the remaining allegations of the amended complaint by May 24, 1995. Previously set status hearing of June 5, 1995 at 9:15 a.m. will stand.